We have one case on the calendar this afternoon, Rogers v. Beechcraft Corporation, number 17-5045, and counsel appear to be ready, so let's proceed. May it please the Court, good afternoon, Your Honors. My name is Joel LaCourse, and I represent Jim and Sherry Rogers and Chris and Jill Evans. Mr. Evans and Mr. Rogers were the sole survivors of a jet plane crash that took place on March of 2017. I'd like to focus my arguments today on three primary areas. That the district court erred in granting summary judgment first by improperly weighing the evidence and misapplying the law as it relates to pull-force testing that took place on the aircrafts to deploy the alternate landing gear. Second, that the court impermissibly weighed the evidence relating to the airplane flight manual checklists, also for deploying the alternate landing gear of the aircraft. And thirdly, that the court impermissibly weighed the evidence supporting defects in the airplane flight manual regarding restarting the electric generators in the aircraft. Beechcraft RB266 did not crash because the two engines were inadvertently shut down. It crashed because the landing gear on the aircraft could not be deployed because of defects in the landing gear and in defects and failures to warn in the airplane flight manual regarding the landing gear and the electric generator. First, whenever there are questions of material fact, they have to be weighed in the light most favorable to the plaintiff. Questions of whether the aircraft's specific specifications regarding to pull-force specifications were within the range that Beechcraft had established, and whether that left the aircraft in an unreasonably dangerous condition. We believe that the court misappropriately weighed that evidence in a light most favorable to the defendants. Could I just ask you on this landing gear issue, are you making an argument relative to your design defect claim, your negligence claim, or both? Simply a product defect claim. Product defect claim. Not a negligence claim defect to the landing gear. And to the extent that you, your side of the case at least, had some expert testimony excluded, is your argument based on the evidence with that testimony excluded or with it included? With it included, Your Honor. Okay. So you're also arguing, I take it, that the court erred in excluding your expert testimony. Is that part and parcel of this argument? Not as it related to the alternate landing gear, Your Honor. As it relates to the alternate landing gear, the court allowed the testimonies of Mr. Sommer and Mr. Bloomfield and allowed them to testify regarding exemplar testing that they had performed on three exemplar aircrafts that showed that the pull-force requirements far exceeded the specifications of Beechcraft. The court allowed that testimony and did not limit that out. We're believing that based upon and further allowed Mr. Sommer to talk about that the airplane flight manual was inadequate as it relates to the alternate landing gear test. All right. Go ahead. And when you're talking about the pull-force, you're talking about after it's been used for a while and not when it leaves the factory. That's true, Your Honor. That's exactly right. We concur that as it left the specifications, it complied at that time. But because it did not satisfy the requirements during its normal useful life, that that may, in fact, be a product defect. And I think there's a litany of cases that support that. Apart from cases, though, what about evidence? How do we know that the pull-force on the actual landing gear device had evolved or changed so that it was harder to pull? How would we know that? Well, Your Honor, we can rely on the Cunningham case and that line of cases that say that if an individual, a product user, is given the right to have heeded the warnings that were provided therein. So we can presume that Mr. Caves knew how to operate the alternate landing gear system. And for whatever reason, we know that the nose gear deployed, but the rear gears didn't deploy. So the question is, why did the rears not deploy? And that's where Mr. Summers and Mr. Bloomfield's testing when they did three exemplar aircrafts realized that the pull-force necessary far exceeded that. But didn't in every one of those tests, though, the landing gear did deploy? Ultimately, now, they had the privilege of hindsight. So they were pulling the thing as hard as they could and had ranges between 100, 118, and 120 pounds before they ultimately did deploy. The question of whether they deployed or not, I think, Your Honor, isn't the issue. It was that in order for them to deploy, it far exceeded the ranges that Beechcraft themselves had set as specifications. But why wouldn't Pilot Caves pull as hard as he could under those circumstances? Just like they did in the tests. We have to presume, pursuant to Cunningham, that he did, Your Honor. And the fact is he did. Well, let me interrupt you for a minute. Isn't Cunningham a failure to warn case? And failure to instruct. But it's not a product liability case, is it? No, Your Honor. But as it relates to that, we have Barber. We have Fields. There's a number of cases in the Smith case that talk about when someone is actually using the product. The court in this case wrongfully inferred that Mr. Caves misused the product. That's the inappropriate inference that the district court made in evaluating the use of the alternate landing gear. And that's inappropriate. There's a rebuttable presumption that Mr. Caves, in fact, did, in fact, use the landing gear properly. He knew that his landing gear was in the nose-down position, Your Honor. And that is the single position that an aircraft cannot land. It bounces and bounces and gets in an attack position and goes up. It could have had no nose gear down. It could have had all rear landing gear. But to be nose gear only was the single position it couldn't be. He knew it was in that position from the flight control tower. So he would have done, and we have to presume with a rebuttable presumption, that he did. And this is where the district court inappropriately waives the evidence. What's your evidence, then, on causation? Well, with respect to proximate causation, it doesn't have to be B factor as long as it is the case. I just asked for your evidence. I didn't ask for a statement of the law. What's the evidence that supports your claim on the element of causation? Number one, that the landing, there was only nose gear only in landing gear, Your Honor. And we can use circumstantial evidence. I tried to use so fast I didn't catch that. I'm sorry, Your Honor. I'll attempt to slow down. That there was nose gear landing, that the nose gear only was down. With Mr. Caves knowing that that was the only condition of the aircraft and knowing the checklist, he would have done all he could do. We know that we have nose gear only. And we know that three other exemplar aircrafts could not function and exceeded those specifications. So we know that that was inappropriate. Secondly, we know that the airplane flight manual and the pull handle itself had no identification as to how far out to pull that handle. We know that as a matter of evidence. And in this case, with no electricity in the aircraft, Mr. Caves had no way to know if, in fact, the landing gear had been fully extended. Which, as a matter of federal law, FAA, determines that a pilot is to be able to know the condition of his extended landing gear at all times. Because there was no electricity, there was no way of indicating for him to know that. So he would have tried to have pulled, had there been, there was no indication on the handle how far it was pulled, we know that that's a defect. We know that he pulled it out far enough, but why he didn't pull it out, we have to believe is a defect in the aircraft. The pounds necessary to pull something, 120 pounds, we saw our experts literally shaking with two hands to try to extend that. That is not the, that is a failure in the design of the aircraft and the product of the aircraft for it to have to be resolved to that condition. Secondly, whether the aircraft properly warned Mr. Caves as to how to use this landing gear is, again, a material question of fact that I think that the court has improperly viewed in the light most favorable. As I indicated, there was no indication any place on the aircraft and that is a complete failure of CFR Title 14-23-155. Are we on your second point or are we still on the first one? That's the second point. Okay. Just wanted to make sure. That is point number two, that the alternate landing gear, that there was no reference in the checklist. There was no reference in the flight manual that instructed or gave Mr. Caves any knowledge to know exactly how or what he was supposed to do with that. I'm going to go to my... Well, doesn't the evidence show that Mr. Caves didn't follow the AFN instructions? For example, the circuit breaker was supposed to be removed and it was still in. Now, Your Honor, again, I think the district court has erred in finding errors that are in a light most favorable to the defendant and not Mr. Caves. The fact that the circuit breaker was on and the handle was on is important for the primary reason that if there is electricity in the plane, that you don't want to have electricity that's telling the alternate landing gear to do something than what you're manually trying to do. Even Beach's own expert said that the fact that the circuit breaker was on and the switch was on had no effect because there was no electricity in this aircraft. That is just a red herring that the defense would have you use as an indication in this case. But in all of the testing we tried with the circuit breakers on, the circuit breakers off, and found that that had, in the condition of where the aircraft was at the time, it had no effect on that. So what you think that there should have been alternate landing gear instructions that said pull as hard as you can? Well, it needed to say something more than just pull. It doesn't say pull four inches. It doesn't say it's going to exceed. It doesn't give a poundage. Pull like your life depends on it? Well, and obviously, Mr. Caves, we can infer that he would have been doing that, Your Honor, because, again, we know the evidence is that he had knowledge that the nose gear down was only, and it's the single formation that would cause this aircraft not to be able to land. My third point, Your Honor, is with respect to the court inappropriately weighed the evidence related to the airplane flight manual as to turning on the electric generators. We have a... Is this the service kit instructions? No, ma'am. This is the AFM air start guide. Now, this is the AFM air start guide as to restarting the generator, because here's what we know is that if Mr. Caves could have gotten electricity going in the aircraft, then he could have deployed the landing gear. Again, the aircraft crashed because there was no landing gear available to him. And so Mr. Caves was left in the untenable position that he had to somehow, first of all, try to start the landing gear, and there is a plethora of evidence that contradicts how, in fact, you are supposed to start the generator. The appropriate checklist should have been for Mr. Caves, simply after he got one engine started, to hit the reset button and on, and the generator should have started. But there was no electricity. And, again, we can assume that Mr. Caves understood that checklist. That's the rebuttable presumption that we have. The court, again, took the defense expert's position that Mr. Caves simply didn't know what he was doing. We hear on Beechcraft's own test pilots in their audio as they are testing, and, in fact, Your Honor, we have evidence that shows that they tried using that exact same checklist and the engine did not start. We hear that Beechcraft test pilot actually communicating, Mr. Caves, he would have known how to do this. He did this 100 times. But it didn't start. And so we know. Then we have defendant's pilot expert, Mr. Gibson, who then says, after we found the defect where their test pilots couldn't start it, he then changes the checklist and says, you know, we probably should have used a different checklist. Checklists are made in this type of an emergency to be clear and unambiguous for pilots who are in this exact scenario. If the engines, if the electric generator didn't start as a result of Mr. Caves having to try to figure out which checklist to use, then that is a failure in the product itself. I'm going to attempt to reserve the rest of my time for rebuttal. Thank you. Thank you, Your Honor. Good afternoon. May it please the Court. My name is Jeff Spahn. I represent the defendant, Beechcraft. The district court properly granted summary judgment on the defect claims on the alternate landing gear claims that were asserted by the plaintiffs. The plaintiffs have three main claims. The first is that there was a manufacturing defect on designing the alternate landing gear. However, the uncontroverted evidence was that this alternate landing gear system was tested extensively at the factory before it was delivered to the first buyer. The pull test was 53.7 pounds. That is uncontroverted. Our barometer for passing the test is 60 pounds. There were also flight tests performed. Wasn't there also evidence that after the accident they tested three similar planes and the pull was 100, 118, and 120 pounds? The plaintiffs did pull, and that's what their experts testified to. When you pull, if you pull sideways and induce a side load, you can get higher loads. However, in the use of the handle, when you pull it back, you're supposed to pull it straight back. You don't pull it sideways. We believe their experts were trying to induce a higher pull force. But even if they did properly test it, it doesn't show that this airplane had a higher than 60-pound pull force or that anything above 60 pounds is somehow defective. Was there any evidence presented that the pull force required can increase with use over time? Yes. What we put in our maintenance manual when the airplane comes in is if there can be some degradation in the pull force. If it's above 64 pounds, that's when you're supposed to make adjustments. So at the factory, it's 60 pounds. Out in the field, it's 64 pounds. It's first tested out in the field at 600 hours, when the airplane's got 600 hours on it. This airplane had a little over 400 hours, so it hadn't even been tested yet. It wasn't old enough to test. In this case, it did pass the tests at the factory, the flight test and the pull test. The second claim that they're asserting is that somehow there's a design defect such that debris can get in the wheel well and that can degrade the pull force. However, as the district court pointed out, the plaintiff's experts did no testing of looking at anything in the wheel well. They had absolutely no evidence that there had been any degradation caused by anything in the wheel well of the landing gear. And they were just guessing that maybe the pull force was excessive. In this case, the design of the wheel well was approved by the FAA, and it was certified as passing the regulations. There's got to be certain requirements to safeguard items in the wheel well, frankly, in case a tire blows. That's the reason behind the regulation is you don't want it affecting other systems. And since some of the alternate landing gear system goes through the wheel well, it's got to have certain shields. On the design defect issue, was there evidence, maybe it was argument, but let me just ask this question, that the aircraft lacked an indicator to show whether the landing gear had deployed? No, absolutely not. In fact, this airplane has what's called three green lights. And every pilot is told, if you have three green lights, then you know all three gear are down. In this case, because he only had his nose gear down, we think he only pulled partway back. He only had his nose wheel down. At most, he had one green light. Now, every pilot is told, if you don't see three green, you can't, it's not like you can roll down the window and look out and see if the gear are down. You've got to look at the pedestal and see if you have three green lights. Do we know if those lights were working? They were working. There had been no squawks if those lights were working. However, once he shut the engines off, the generators shut off, and he was on his aircraft battery, those three green lights will still light up on the main battery. However, in this case, he had switched the battery to the standby battery. Why he did that, we don't know, because he wasn't following any checklist. Our AFM specifically says, if you are on standby battery, the indicator lights do not work. That's what it says in the AFM. Why does it say that? Because if you're on standby battery, you are on the last electrical source. For the airplane, it's only going to serve certain items on the airplane. It will not light up the three green lights. So, here's what we know with Mr. Caves. If the plaintiff says the battery was on the main battery, if that's true, then at most he had one green light. And we know air traffic control told him, hey, you only have one gear down. And he went around. So, based on all of the evidence, we know he knew he didn't have his gear down. We think he didn't care whether he had his gear down. He was intent on getting the airplane on the ground. And that's why he came around so quickly. After his first flyby over the runway, he climbed and he came back immediately. Rather than doing what most pilots would do, which is climb and gain some time to think what you're doing, he immediately came back around and decided to put that airplane on the ground. Then he made a fatal decision. He decided to try to take back off again after he scraped along the runway, after he bled off his speed. And he stalled the airplane when he tried to climb. But we know in this case, the airplane did not have a manufacturing defect when it left beach. It passed the test. There's no evidence that it had a design defect. And the judge, the district court, properly excluded his two experts on the design theory. Those two experts were Mr. Bloomfield and Mr. Sommer. Neither one has had any training, experience, background in designing landing gear systems or alternate landing gear systems. And the judge, after considering 1,700 pages and two days of actual test hearings, concluded these two experts were not qualified to render any opinions on the design of the airplane. And furthermore, the evidence was that neither one of them looked at the wheel well to see if there was any debris or anything that might have increased the pull force on this airplane. What we know is that when it left beach, it was at 53.7 pounds. It may have increased somewhat, but even if it's in the 60s, there's no evidence that that's a defect. There are many airplanes that have pull forces far exceeding either the 60 or the 64 pounds. That's kind of an arbitrary limit that beach set, but there's no federal aviation regulation that says a pull force has to be X pounds. And the plaintiffs didn't come forward with any evidence that said it had to be X pounds. What is your understanding of Mr. LaCourse's rebuttable presumption arguments? He used that phrase several times in his argument. Your Honor, I don't think that entitles him to just make certain assumptions of what Mr. Caves did in this case. In this case, we know the alternate handle was pulled partway out. We know Mr. Caves received zero training on how to deploy it. Zero. We deposed the people that he went to classes with. There's no evidence he ever deployed the alternate landing gear system ever. This was his first time. I don't think this rebuttable presumption entitles him to say, well, we can speculate that maybe he pulled. And what we also know is that even with their experts pulling the alternate landing gear at 100 pounds or 110 pounds, it's still deployed every time. And that's something the district court noted is, all right, they went and tested three other airplanes. Beechcraft says they didn't do the test correctly because they were pulling sideways. But I will accept they did the test right. But there's no evidence this airplane had a manufacturing or design defect to it. And she noted that we have never received any reports that any pilot has been unable to use the alternate landing gear system on this airplane. In all the years of production of this airplane, we've received no reports that, hey, it's too hard to pull this handle back. With respect to the last defect claim they have on the landing gear, as I understand it, their claim is that the handle that says pull should say pull four inches or pull 64 pounds. That's the only thing I can say on that is that it gives the direction that you're supposed to deploy the handle. You're supposed to pull it. There's no airplane that I'm aware of that says you should declare pull 64 pounds or pull four inches. I don't know how you would put that on a handle and expect a pilot to comply with it. He's not supposed to have a tape measure or a ruler in there to see if he's pulled it four inches. What he should do is pull it until it stops. That's what they're taught. But in this case, Mr. Caves didn't go through that training. So, in this case, he pulled it back about two inches. With respect to the generator issue, this is another one where they say there's a rebuttable presumption that I don't quite understand. There's no evidence that he tried to reset the generator once he got the engine started. There's no evidence that he did that. You don't have to reset the generator. You can just operate on the battery and that will provide the electrical power. But in this case, the generator was not on. What they claim is that we should have given better instructions on how to reset the generator. Well, in fact, the instructions, if you follow them literally, it won't restart the generator, right? No. Well, that's what they say. But actually, there's two different checklists. And he didn't follow either one, Your Honor. There's an engine shutdown or failure in flight checklist. There's no evidence he followed that. And he did shut down the engines. The engines don't know whether the pilot intended to shut them down or did it by accident. In this case, Mr. Davis shut the engines off by accident. But if he had followed that checklist, he would have turned the generator to the off position. Then if he decides, once he gets the engine started, that he wants to reset his generator, there's an air start checklist that you go through to restart the engine. And one of the steps is to turn the generator to on, reset, on. And that will turn on the generator. There's no evidence he did that. That he followed any checklist or that he even attempted to reset the generator. Maybe I'm getting confused on the record, but I thought that Beach's own expert tried to follow the air start checklist, following precisely what it said to do, and the checklist was inaccurate, that you had to do different steps than what was in the checklist. We tested RB159, which was a test airplane. And every time, every time, the generator reset just by flipping it up to reset and back to on, except for one time. And that one time, the pilot said, all right, I'll shut it off and I'll flip it back on. And it came on. So in this case, every time it reset, when this switch is kind of a three-position switch, the main position is on. If you want to shut it off, you flip it down. If you want to turn it on, you flip it up and it goes all the way to reset, and then it resets automatically to the on position. One time it didn't reset. And the pilot, it's like a light switch. You go and flip a light switch, it doesn't come on, you'll shut it off and flip it back up to see if it comes on. In our case, we actually had both checklists. We said on the engine failure or the engine shutdown or failure in flight checklist, you should turn the generator switch to off. Some pilots may decide after they've shut down that engine, I'm not going to restart that engine. There are reasons to do that. You may be right over the runway, you don't want to spend time trying to restart your engine, you're just going to land. Counselor, we're over time. I apologize. No, that's all right. I apologize. Unless there are any other questions, I'd be happy to answer them. Thank you. Thank you. Let's give Mr. LaCourse an extra $119. We'll make it equal. Thank you for that equity, Your Honor. Your Honor, I've got a couple important rebuttal points. With respect to Mr. Spahn's characterization that Mr. Caves could always see three green lights down, their own electrical expert indicated that when there is no electricity on the aircraft, as the case as we had with RB226, that you could not, in fact, see the three greens. There would, at that point, then be no indication as to what the condition of the extended landing gear is. They hypothesized he could see one, he could see two. With no electricity, Beechcraft's own electrical expert says you cannot see those three greens. There has to be some other indication, and that's where we state, if you could at least have some sort of marking, anything on there that lets the pilot know that he has extended that pull handle far enough to make that determination that it's been extended far enough. Secondly, the question would be, what would a reasonable pilot in that scenario expect as it relates to the pull force of that test? It's this consumer expectation test. It's the test that this court and the Oklahoma courts have adopted with their determining whether or not there is a product defect or not. When you evaluate the consumer expectation test, when you look as to what it would take to deploy that landing gear, a pilot would have a right to expect the aircraft to function in the specifications from which it was manufactured. In this case, we know that from at least three exemplar aircraft, that it exceeded the expectation of that pilot. Even if a pilot is in a scenario where we understand Mr. Case has no hydraulics, he has no lights, he has no indication, he's trying to fly the airplane with one hand on the yoke and pull with his other hand to try to deploy the alternate landing gear, pulling as hard as he can, it has to be expected that a pilot in that scenario understands how far that they're supposed to pull that pull force handle. And they failed to do that. Mr. Spahn and the district court was critical upon Mr. Case's training. Mr. Case, and I think the testimony and evidence has been, he went through all the training and all the material necessary to be type certified in this aircraft. A rebuttable presumption means just that. It can be presumed that he knew how to operate this aircraft, including a mastery of all the checklists. That's part of what his training and certification was required of him. Can I just ask you a question about the relationship between the district court's rulings on your experts and the summary judgment? You really haven't said much about the former. And what I'd like to know is if all those rulings stand on appellate review, do all of your arguments this afternoon still hold? None of the arguments that I have made today, Your Honor, are conditioned upon changing any of the lower court's rulings with respect to expert testimony. I appreciate that clarification. Thank you, Your Honor. Thank you for your time today. Thanks to both of you for your arguments this afternoon. The case will be submitted and counsel are excused. This court will stand in recess until 9 o'clock tomorrow morning.